IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01763-MEH

VAIL SUMMIT RESORTS, INC.,

      Plaintiff,

v.

ZIP-FLYER, LLC, a Kentucky limited liability company,
ZIP-FLYER, LLC, a New York limited liability company, and
SHAWN LERNER,

      Defendants.

_____

## ORDER
_____

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court are Plaintiff Vail Summit Resorts, Inc.'s ("VSRI") Motion for Partial Summary Judgment ("VSRI's Motion") (ECF 75) and the Motion for Partial Summary Judgment of Zip-Flyer, LLC, a Kentucky limited liability company ("ZF KY"), Zip-Flyer, LLC, a New York limited liability company ("ZF NY") (together, "Zip-Flyer Defendants"), and Shawn Lerner ("Mr. Lerner") ("Defendants' Motion") (ECF 96). Both motions are fully briefed, and the Court finds that oral argument will not materially assist in its adjudication of either. Based on the record herein and for the reasons that follow, the Court **grants in part** and **denies in part** VSRI's Motion and **grants in part** and **denies in part** Defendants' Motion.

## BACKGROUND

      This case arises out of a dispute regarding a contract between the parties "to construct a zipline for guest use at Breckenridge Ski Resort." First Am. Compl. at ⁋ 1. VSRI is a Colorado corporation and "the lessee of Breckenridge Ski Resort." *Id.* at ⁋ 9. VSRI alleges that Defendants

breached contractual agreements by missing various deadlines and failing to cure alleged deficiencies when asked to do so. *Id.* at ¶¶ 20–34. VSRI has brought this action against all three Defendants because it alleges "[a]ll of the Defendants are parties to the [c]ontract, or are otherwise liable." *Id.* at ¶ 11.

**FACTUAL FINDINGS**

The Court makes the following findings of fact viewed in the light most favorable to the non-moving party for each fact presented. The Court also does not consider evidence submitted by either party which is not material to the Motions, properly objected to, and/or inadmissible. The following facts are undisputed unless otherwise cited.

**The Parties**

1.     VSRI operates Breckenridge Ski Resort, located in Summit County, Colorado.

2.     VSRI retained the Zip-Flyer Defendants to design and install the new Sawmill Zipline ("Zipline").

3.     ZF NY is a New York limited liability corporation.

4.     ZF KY is a Kentucky limited liability corporation

5.     Mr. Lerner is the founder, CEO, and 100% owner of both ZF KY and ZF NY.

**The Agreement**

6.     VSRI and ZF KY entered into a "Design and Build Agreement" on August 24, 2015 ("Agreement") pursuant to which ZF KY was to design and install the Zipline.

7.     VSRI entered into the Agreement "in reliance on [ZF KY's] professional skill and judgment in designing, manufacturing and installing the Zipline System."

8.      The Agreement incorporated certain contract documents ("Contract Documents"), including the Zipline System Plans ("Plans"), the "Seller's Proposal," the "Change Order Form," the "Lien Waiver Form," and the "Milestone Dates."

9.      ZF KY was to design and engineer the Zipline in accordance with the Plans.

10.     VSRI and ZF KY also agreed that "[t]ime is of the essence with regard to all dates and time periods in this Agreement."

11.     The Agreement outlined certain insurance requirements on the part of ZF KY.

12.     ZF KY and VSRI entered into four separate Change Orders modifying the Agreement: Change Order No. 1 on October 26, 2015; Change Order No. 2 on January 12, 2016; Change Order No. 3 on February 16, 2016; and, later; Change Order No. 4 on March 7, 2017.

**The Amendment**

13.     A First Amendment to the Design Build Agreement ("Amendment") was executed on June 1, 2016.

14.     The Amendment states that it is "between VAIL SUMMIT RESORTS, INC., a Colorado Corporation ('Buyer') and ZIP-FLYER, LLC, a Kentucky limited liability company ('Seller')."

15.     The signature block of the Amendment, though, shows Mr. Lerner signing on behalf of Zip-Flyer, a Colorado limited liability company ("ZF CO").

16.      The Amendment required the Seller to "erect and install the Zipline system in compliance with the Plans."  Exh. C at VSRI000031.

17.     The Amendment also provided that the Seller was "solely responsible for and ha[d] control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract Documents."  *Id.*

18.     Seller and Buyer agreed in the Amendment that "TIME IS OF THE ESSENCE" and to "diligently and continuously prosecute the Work and achieve substantial completion no later than the Substantial Completion Date." *Id.* at VSRI000033.

19.     Specifically, under the Amendment, the work was to "conform to the requirements of the Contract Documents and applicable laws and applicable permits." *Id.* at VSRI000039.

20.     The Amendment provided that, in the event Seller defaulted on the Contract, VSRI would provide "at least seven (7) days written notice" for Seller to cure.  If Seller failed to timely cure, VSRI "shall have the right to: (a) terminate in whole or in part the Contract Documents and the Work thereunder and Seller shall not be entitled to any further compensation whatsoever for any Work undertaken or otherwise, except as specifically provided in this Section." *Id.*

21.     The Amendment also includes a liquidated damages provision.

**ZF KY's Dissolution**

22.     On November 2, 2010, the Secretary of State for Kentucky administratively dissolved ZF KY for failure to file a 2010 annual report.

23.     On September 17, 2018, ZF KY filed a reinstatement application with the Secretary of State for Kentucky.

24.     On September 17, 2018, the Secretary of State of Kentucky found ZF KY met all requirements for reinstatement and reinstated ZF KY, effective September 17, 2018.

**ZF NY**

25.     In May 2017, Mr. Lerner informed VSRI that ZF KY was "no longer in business or a registered business entity."  Exh. F at VSRI0012073; Exh. G at VSRI0012434.

26.     On August 22, 2017, VSRI and ZF NY executed Change Order No. 5 ("CO5") to the Agreement.

27.     Through CO5, ZF NY was assigned the Agreement and the Amendment.

28.     CO5 modified the milestone dates and extended the deadlines for ZF NY's performance. Exh. C at VSRI000081.

29.     VSRI executed CO5 specifically to ensure that ZF NY assumed the Contract in order to get the Zip-Flyer Defendants to remobilize and finish the Zipline.  Exh. B at 3.

30.     Pursuant to CO5, ZF NY's future deadlines included at least two key milestone dates: Substantial Completion of the Zipline by October 28, 2017, and Final Completion of the Zipline by November 8, 2017.

31.     ZF NY further agreed in CO5 to "diligently and continuously prosecute the Work in advance with the Revised Project Schedule in order to achieve the Milestone Dates and any failure in Milestone achievement is a breach of the agreement."

32.      The Agreement, the Amendment, Change Orders Nos. 1–4 to the Agreement, and CO5 are the "Contract."

33.     The Contract is governed by Colorado law.

**Zipline Design**

34.     ZF KY provided design documents, which are part of the Plans, for the Zipline in summer 2016.

35.     The July 7 and August 25, 2016 design Plans specified that the overhead zipline cable for the Project was to be a Redaelli 18mm Pack 1 type cable with a Grade 2160 minimum breaking strength of 297 kilonewtons (kN).

36.     The 297 kilonewton (kN) minimum breaking strength in the design Plans was an important safety aspect of the Zipline's design.

37.     For various reasons, the Zipline experienced continual delays through 2016 and 2017.  Exh. J at 27:23–29:7.

38.     ZF NY mobilized its installation crew in mid-September 2017 to begin Zipline construction after the execution of CO5.  Exh. B at 2.

39.     VSRI sent a deficiency letter to Defendants on September 29, 2017, outlining the Zip-Flyer Defendants' deficiencies as of that date.  Those alleged deficiencies included that Defendants had not timely provided (a) certification for structural steel welds, (b) a final O&M manual, (c) final construction plans, including braking plans, and (d) contracts and certificates of insurance for all subcontractors.  Exh. K at VSRI000085–87.

40.     VSRI and the Zip-Flyer Defendants nevertheless continued to work toward completing the Zipline in the fall of 2017, including, for example, installing the overhead cables in October 2017.

41.     One or both Zip-Flyer Defendants ordered the Zipline's overhead cables in June 2016. Exh. L at 143:11–125:1; Exh. J at 29:20–30:4

42.     On October 6, 2017, Mr. Lerner, on behalf of one or both of the Zip-Flyer Defendants, sent VSRI the Redaelli manufacturer's certifications of compliance and test documents ("Certifications") for the overhead zipline cables that had been ordered for the Zipline and delivered to Breckenridge Ski Resort.

43.     VSRI sent the Certifications to its third-party engineer, Thomas Jewett ("Mr. Jewett"), to review and confirm that the overhead cables complied with the Contract Plans and were Redaelli 18mm Pack 1 type cables with a Grade 2160 minimum breaking strength of 297 kN.

44.     On October 10, 2017, ZF NY installed the first overhead zipline cable via helicopter.  Exh. B at 3.

45.     The remaining overhead cables were scheduled for installation on October 21, 2017.

46.     On October 19, 2017, Troy Garland ("Mr. Garland"), a professional engineer who conducted a review of the Zipline, sent an email to Defendants and VSRI informing all parties of a "BIG RED FLAG," that the cables would not work.

47.     Mr. Garland warned that the cables ordered by the Zip-Flyer Defendants and already partially installed had only a 257 kN minimum breaking strength, even though "[t]he cable specification has always been 297 kN breaking (Grade 2160).  257kN is the breaking strength of Grade 1770.  This lower grade cable will not work for span 1."

48.     On October 20, 2017, Mr. Jewett sent a formal letter summarizing his separate and independent review of the cable, stating that the delivered cables did not "meet the requirements specified in the design documents" and did not "comply with ASTM F2959-14 Standard Practice for Special Requirements for Aerial Courses" safety requirements, and recommending "the wire ropes furnished . . . not be installed or used on the subject project."

49.     The overhead cables did not comply with the Plans for the Zipline.

50.     Mr. Lerner admitted that "the wrong cable [was] on-site and in the air," which cable "does not meet the engineering documents" and "needs to be removed immediately with the helicopter" such that "the project [was] postponed . . . pending solutions."  Exh. O at VSRI0006301.

51.     On October 20, 2017, VSRI sent Defendants a notice to cure their alleged contractual defaults.  This included having the Zip-Flyer Defendants immediately remove the incorrect cable, deliver the correct cable, obtain all approvals within the contracted timeframe, and remedy the additional alleged breaches identified in September 2017.  Exh. R at VSRI000088.

52.     After the incorrect cable was installed, ZF NY prepared a plan to remediate the situation that was shared with VSRI at the time.

53.    VSRI sent Defendants a formal "Notice of Default" on November 2, 2017.  Exh. S at VSRI000095.

54.    Mr. Lerner testified that ZF NY failed to achieve Substantial Completion by October 28, 2017.  Exh E at 179:4–6; Exh. J at 54:15–18.

55.    Mr. Lerner testified that ZF NY failed to achieve Final Completion by November 8, 2017.  Exh. E at 40:7–9, 177:9–11; Exh. J at 49:20–22, 54:19–24, 70:6–8.

56.    VSRI terminated the Contract on January 26, 2018.

57.    The Zipline was not completed in summer 2018, as originally planned.

58.    Following the purported contractual breach, VSRI hired Holmes Solutions ('Holmes") to continue working on the project.  Exh. H at VSRI0002847.

## LEGAL STANDARDS

A motion for summary judgment serves the purpose of testing whether a trial is required.  *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976,

979 (10th Cir. 2002).  Only admissible evidence may be considered when ruling on a motion for summary judgment.  *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined.  *Celotex*, 477 U.S. at 322.  That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002).  These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'"  *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).  "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge."  *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005).

## ANALYSIS

### I.      VSRI's Motion

VSRI seeks summary judgment as to liability on its breach of contract claim against both of the Zip-Flyer Defendants.  To recover on a breach of contract claim, the plaintiff needs to prove "(1) the existence of a contract; (2) that [plaintiff] performed [its] duties under the contract (or that [it] was justified in failing to do so); (3) that [defendant] failed to perform the

contract; and (4) resulting damages." *Long v. Cordain*, 343 P.3d 1061, 1067 (Colo. App. 2014). For the following reasons, the Court grants summary judgment as to ZF NY but denies summary judgment as to ZF KY.

      A.      <u>VSRI's and the Zip-Flyer Defendants' Contractual Relationship</u>

First, VSRI contends that ZF KY and ZF NY "are both parties to the Contract." Pl. Mot. at 18. Defendants respond that there are factual disputes regarding which entities were the contracting parties for the Amendment and CO5. Def. Resp. at 18.

It is uncontested that VSRI and ZF KY entered into a "Design Build Agreement." *See* Exh. C at VSRI000001 ("THIS DESIGN BUILD AGREEMENT (the 'Agreement') is made on the 24th day of August, 2015 . . . between ZIP-FLYER, LLC, a Kentucky limited liability company ('Seller') . . . and VAIL SUMMIT RESORTS, INC., a Colorado Corporation ('Buyer')."). Also, it is uncontested that VSRI and ZF NY entered into CO5 in which ZF NY assumed the Contract. *See* Exh. C at VSRI000081 ("Seller," defined as "ZIP-FLYER, LLC, a New York Limited Liability Company," agreed to "assume all rights and responsibilities of 'Seller' under the Agreement and all change orders.").[1]

The main dispute between the parties centers around the Amendment to the Agreement. That document begins by saying it is executed "between VAIL SUMMIT RESORTS, INC., a Colorado Corporation ('Buyer') and ZIP-FLYER, LLC, a Kentucky limited liability company ('Seller')." Exh. C at VSRI000030. Yet, the signature block at the bottom of the Amendment shows that Mr. Lerner, as Founder and CEO, signed on behalf of "ZIP-FLYER, LLC, a Colorado limited liability company." *Id.* at VSRI000045.

---

[1] There is a dispute as to whether Mr. Lerner, in his personal capacity, is a party to CO5. As VSRI does not seek summary judgment regarding Mr. Lerner, the Court does not address at this time whether Mr. Lerner is a party to CO5.

In the "Recitals" section, the Amendment states, "(a) Buyer and Seller executed a Design Build Agreement dated August 24, 2015[,] . . . pursuant to which Buyer engaged Seller to design, engineer, and build the Zipline." *Id.* at VSRI000030. The Amendment further states that "[i]t is the intent of Buyer and Seller, by this Amendment, to amend and modify certain of the provisions and conditions of the Original Agreement." *Id.* By the nature of these recitals, it is not immediately clear how ZF CO could be the contemplated "Seller." ZF CO did not execute the Agreement with VSRI. Moreover, ZF KY, not ZF CO, executed Change Orders Nos. 1 through 4. Exh. C at VSRI000069, VSRI000078–80. In total, then, ZF CO's involvement in the Zipline seems to be limited solely to the Amendment.

Defendants claim, however, that ZF CO is the entity that executed the Amendment because the Amendment requires the "Seller" to pay Colorado state taxes, and "ZF KY could not pay such taxes because it was not a Colorado [c]ompany." Def. Resp. at 19. The Amendment does require the Seller "to pay all Colorado State Sales and Use Tax ('2.9%') as applicable on materials and supplies, and will hold Buyer harmless from all Colorado State taxes arising out of the Contract Documents and the Work performed for Seller by its employees and subcontractors." Exh. C at VSRI000037. Yet, Defendants cite no law indicating that a foreign corporation may not pay Colorado state taxes. Contrary to Defendants' assertion, VSRI cites to a document from the Colorado Department of Revenue, which contains taxpayer identification instructions "[if] the applicant is from another state." *See* "Colorado Sales Tax Withholding Account Application," Colorado Department of Revenue, *available at* https://www.colorado.gov/pacific/sites/default/files/CR0100AP_2018.pdf (last accessed July 27, 2020). The Colorado Department of Revenue also states, "[a]ny retailer who does not maintain a physical location in Colorado is exempted from state sales tax licensing and collection requirements if the retail sales of tangible

personal property, commodities, and/or services made annually . . . into Colorado in both the current and previous calendar years are less than $100,000." "Out-of-State Businesses," Colorado Department of Revenue Taxation Division, available at https://www.colorado.gov/pacific/tax/out-of-state-sales-tax (last accessed July 27, 2020).  At best, there is conflicting information about whether ZF KY could pay Colorado sales taxes as contemplated by the parties.

Considering the Amendment in its entirety, there is a genuine material dispute as to which entity executed the document.  The language of the Amendment defines "Seller" as ZF KY while the signature block indicates ZF CO agreed to it.  Defendants' contention that ZF CO must be the proper entity for Colorado sales tax purposes only further complicates the matter, because it is not readily clear which entity would pay, if any, the taxes.  Based on the evidence presented and when viewed in the light most favorable to Defendants as the non-moving parties on this issue, the Court cannot conclusively find that either ZF KY or ZF CO is the executing party to the Amendment.

However, regardless of which entities are parties to the Amendment, Defendants do not dispute (and cannot dispute) that ZF KY executed the Agreement and ZF NY executed CO5 and assumed the Agreement.  In both instances, ZF KY and ZF NY have a contractual relationship with VSRI regarding the Zipline.  *See Long*, 343 P.3d at 1067.  Therefore, there is no genuine dispute as to these parties, and summary judgment is appropriate.

B.    VSRI's Performance

Next, VSRI asserts that "[a]t all points in time leading up to the Zip-Flyer Defendants' default, VSRI performed its duties under the Contract, including paying the Zip-Flyer Defendants for work performed."  Pl. Mot. at 18.  Defendants argue that VSRI did not perform, because "VSRI contractually owed a substantial amount of money which had not been paid."  Def. Resp. at 19.

For the Court to grant summary judgment on this issue, VSRI must prove it "performed [its] duties under the contract." *Long*, 343 P.3d at 1067.

### 1. VSRI's Payments

Mr. Lerner testified that VSRI "owed us a substantial amount of money that they weren't paying." Exh. 7 at 111:22–24. However, when ZF NY and VSRI executed CO5, the parties represented that VSRI had paid a percentage of the total amount. CO5 provides, "Buyer and Seller agree that pursuant to the Payment Schedule defined in Section 8(vi) of the Amendment[,] 70% of the Build Price has been paid to Seller despite Seller's failure to meet certain obligations for such payments." Exh. C at VSRI000081. In fact, the parties also represent in CO5 that part of VSRI's payment was for the deposit payment in which there were still outstanding issues not completed by the Defendants including providing a "final O&M manual for submittal to the USFS for review." *Id.* Defendants have provided no specific evidence, other than Mr. Lerner's deposition testimony quoted above, that VSRI did not pay for the work Defendants performed. Such testimony, absent additional evidence, could be viewed as nothing more than self-serving testimony. *See Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1121–22 (10th Cir. 2004) (court considered the only submitted evidence of testimony as self-serving). However, the Tenth Circuit has recognized that "virtually any party's testimony can be considered 'self-serving.'" *Greer v. City of Wichita*, 943 F.3d 1320, 1325 (10th Cir. 2019). "[S]elf-serving testimony is competent to oppose summary judgment." *Id.* Without additional conclusive evidence, Mr. Lerner's testimony creates a genuine dispute. As such, the Court finds a material factual issue exists regarding VSRI's performance, making summary judgment inappropriate on this issue.

2.      Unclean Hands

Defendants also contend that VSRI did not perform because it had unclean hands.  Def. Resp. at 19.  "Under the doctrine of unclean hands, one who comes into equity must do so with clean hands.  The court will not consider a request for equitable relief under circumstances where the litigant's own acts offend the sense of equity to which he or she appeals."  *Ajay Sports, Inc. v. Casazza*, 1 P.3d 267, 276 (Colo. App. 2000).  First, Defendants believe that VSRI "was speaking with . . . at least three other vendors" about the Project while "pretending to work with ZF NY on a roadmap to completing the project."  *Id.*  The evidence reflects that, eventually, Holmes replaced Defendants on the Project after VSRI terminated the Contract with Defendants.  Exh. H at VSRI002847.  VSRI argues it waited many months after putting Defendants on notice of alleged failures before it engaged in specific discussions about replacing Defendants on the Project.  Exh. 12 at VSRI0002391.

Defendants cite to Exhibit 12 as evidence that VSRI "pretended" to work with Defendants but actually sought to replace Defendants on the Project.  However, Exhibit 12 does not demonstrate any malintent by VSRI.  In a paragraph discussing renewal of a building permit, Exhibit 12 states VSRI "need[s] to assess where [it will be] in the next couple of weeks, and decide if we want to renew in Zip[-]Flyer's name, or wait until we have a decision as to a potential Plan B vendor."  *Id.*  Calling the other potential vendors "Plan B" implies that Defendants were "Plan A."  Moreover, Exhibit 12 is dated December 1, 2017 which is after the Notice to Cure letter was sent and about a month before VSRI terminated the Contract.  *Id.*  Exhibit 12 hardly shows any bad faith or unclean hands on the part of VSRI in communicating with other vendors.

Second, Defendants argue that the contract only requires "Seller, after being provided at least seven (7) days written notice, to commence and diligently proceed to cure."  Exh. C at

VSRI000041.  Defendants assert that in an effort to "proceed to cure" after the Notice of Cure letter was sent on October 20, 2017, they "worked to create a written roadmap to complete the project complete with tasks, deadlines and milestones." Def. Resp. at 21.  By creating the roadmap, Defendants claim they fulfilled their contractual obligation to "proceed to cure," but VSRI terminated despite Defendants' good faith efforts.

The Court finds Defendants have provided insufficient evidence to create a genuine dispute as to VSRI's alleged unclean hands.  The Notice of Cure letter is not the only correspondence sent by VSRI regarding Defendants' alleged delays and deficiencies.  In June 2017, VSRI sent a letter to Defendants expressing fears over completion of the Project.  *See* Exh. G. at VSRI0012434 ("recent actions by Zip-Flyer have given rise to concerns by VSRI that Zip-Flyer may be unwilling or unable to complete its performance of its obligations under the Agreement").  Additionally, VSRI sent a September 29, 2017 letter outlining specific deficiencies by Defendants.  Exh. K at VSRI000085–86.  These letters demonstrate that Defendants were on notice of VSRI's concerns months before the Notice to Cure letter.  Accordingly, Defendants have failed to demonstrate that a genuine dispute exists with respect to their unclean hands defense, and summary judgment is appropriate.

C.      Zip-Flyer Defendants Alleged Failure to Perform

VSRI argues that the Zip-Flyer Defendants failed to perform and, thus, breached the Contract.  "Failure to substantially perform constitutes a breach of contract." *Stan Clauson Associates, Inc. v. Coleman Brothers Const., LLC*, 297 P.3d 1042, 1045 (Colo. App. 2013).  VSRI alleges multiple instances of breach by the Zip-Flyer Defendants, including the ordering and installing of an incorrect overhead cable and failing to meet either the Substantial or Final

Completion Dates.  Pl. Mot. at 18–21.  Defendants dispute that the Zip-Flyer Defendants breached, arguing there are genuine factual disputes to resolve.  Def. Resp. at 21–23.

> ### 1.   The Cable

The Design Build Agreement states, "Seller desires to sell, deliver and install and Buyer desires to purchase from Seller, the equipment described in this Agreement."  Exh. C at VSRI000001.  Among the Contract Documents are the Plans which call specifically for a Grade 2160 Redaelli cable with a minimum breaking strength of 297 kN.  Exh. H at VSRI0012049–50; Exh. I at VSRI0008384–85; Exh. E. at 121:23–122:9, 160:2–5 ("Q:  And the design specifications from 2016 indicate a kilonewton breaking force of 297; is that correct?  A:  Yes.").  ZF NY delivered a Grade 1770 Redaelli cable with a minimum breaking strength of 257 kN.  *See* Exh. O at VSRI0006301 ("The cable specification has always been 297kN breaking (Grade 2160).  257kN is the breaking strength of Grade 1770.  This lower grade cable will not work for span 1.").  The Grade 1770 Radaelli cable was installed via helicopter.  Exh. B at 4, ⁋ 22.

Mr. Lerner has admitted that "[t]he wrong cable was a mistake on Zip[-]Flyer's part."  Exh. A at VSRI0005918.  Mr. Lerner "acknowledge[d] that Zip[-]Flyer ordered the wrong cable in June 2016" and that "Zip[-]Flyer willingly accepts the professional and financial responsibility to correct it."  *Id.*  Mr. Lerner confirmed that ZF NY "ha[d] the wrong cable on-site and in the air," because the cable "does not meet the engineering documents" and would have to "be removed immediately with the helicopter."  Exh. O at VSRI0006301.  Because of the mistake in ordering and installing the cable, Mr. Lerner also admitted the "mistake caused us to not be able to complete the installation efforts."  *Id.* at VSRI0005916.

Although there is no genuine dispute that ZF NY committed the error of ordering and installing the wrong cable, there is a dispute as to whether this constitutes a breach.  VSRI sent the

Notice to Cure letter, requesting, in part, that Defendants cure the cable issue.  Exh. R at VSRI000088.  ZF NY contends that it "proceed[ed] to cure by providing roadmaps to completion and committing to procur[ing] a new cable such that the zipline could be finished."  Exh. 11 at VSRI00000265–269.  Whether ZF NY's actions satisfied its obligation to "proceed to cure" is a factual question that neither party has conclusively established without genuine dispute.  Mr. Lerner's admissions that ZF NY ordered the wrong cable creates the impression of breach, but the Court cannot ignore the "proceed to cure" provision which also binds both parties.  Because there is a genuine dispute as to ZF NY's alleged "proceeding to cure" the cable problem, the Court does not grant summary judgment on this issue.

2.       Substantial and Final Completion Dates

ZF NY did not meet the Substantial Completion or Final Completion milestone dates as described in CO5.  ZF NY needed to meet Substantial Completion by October 28, 2017 and Final Completion by November 8, 2017.  CO5 provides, in part, ZF NY "shall diligently and continuously prosecute the Work in accordance with the Revised Project Schedule in order to achieve the Milestone Dates and any failure in Milestone achievement is a breach of the agreement."  Exh. C at VSRI000081.  Mr. Lerner testified that Zip-Flyer did not substantially complete the Project by October 28, 2017.  Exh. E at 179:4–6 ("Q:  Did Zip-Flyer substantially complete the project by October 28, 2017?  A:  No.").  This testimony is corroborated by the testimony of Melody Lam, the former director of finance for ZF NY.[2]  Exh. J at 54:15–18 ("Q: And was the project substantially complete on [October 28, 2017]? A: I—from my understanding

---

[2] Ex. J at 9:7–13 ("I was hired in officially under the title of director of finance. It effectively over time became finance, operations, marketing. Everything other than engineer, I would say, I had – was within my scope."), 9:14–15 ("Q: Did you work closely with Shawn Lerner? A: Very."), 27:23–28:7.

of what substantial is, no.").  Mr. Lerner also testified that Zip-Flyer did not meet Final Completion by November 8, 2017.  Exh. E at 40:7–9, 177:9–11 ("Q: Would you say [the Zipline] was finally complete in January 2018?  A: No.").

The evidence establishes no genuine dispute as to ZF NY's breach regarding the Substantial Completion and Final Completion dates.  The Court also finds this issue distinct from the cable dispute.  Although the "proceed to cure" provision would apply to nearly any alleged breach by the Zip-Flyer Defendants, the parties specifically bargained for these completion dates; that is, the completion dates were initially set in the Amendment, then ZF NY directly negotiated for an extension of these dates in CO5.  Moreover, the Amendment explicitly provides that "time is of the essence" and missing a milestone date constitutes breach of the contract.  Exh. C at VSRI000033.  ZF NY failed to meet the completion dates, so by the very language of the Amendment, ZF NY breached.  Because there is no genuine dispute as to that fact, the Court finds ZF NY breached the Contract, and summary judgment is appropriate.

However, because the Court found that there is a dispute as to which entity executed the Amendment, there is a genuine dispute as to whether ZF KY breached the Substantial and Final Completion milestones.  The Agreement does not provide specific dates for substantial or final completion. Exh. C at VSRI000029.  As already mentioned, the first instance of specific milestone dates is found in the Amendment, which provides September 30, 2016 as the Substantial Completion Date and June 15, 2017 as the Final Completion Date.  Exh. C at VSRI000053.  Although there are different milestone dates set forth in CO5, ZF KY never executed that specific document; therefore, ZF KY only breached as to the milestone dates if it is a party to the Amendment.  The trier of fact must decide that issue, so summary judgment on ZF KY's alleged breach of the completion dates is improper.

3.      Other Alleged Breaches

VSRI identifies other purported breaches by the Zip-Flyer Defendants.  In its September 29, 2017 deficiency letter, VSRI identified at least seven different items which it believed to be past due, including providing certification for the structural steel welds, a final O&M manual, final construction plans, and certificates of insurance for all subcontractors.  Exh. K at VSRI000085–86.  VSRI now argues that these same deficiencies constitute breaches by the Zip-Flyer Defendants.  Pl. Mot. at 21.

The parties dispute some of these additional alleged breaches.  For example, as to the final O&M manual, Defendants claim they produced the manual.  Mr. Lerner has testified that ZF KY provided the O&M manual for the Project on several occasions between 2016 and 2018.  Exh. 6 at 154:3–10.  However, Defendants have not produced this manual as evidence in this matter. Regarding other of these alleged breaches, there does not appear to be any genuine dispute.  For example, as to the insurance certificates, Mr. Lerner has admitted to not having the requisite certificates for the Zip-Flyer Defendants. *See, e.g.*, Exh. D at106:5–11 ("Q: And so Zip-Flyer Kentucky did not comply with the insurance requirements identified in this agreement on pages 7 through 9; is that correct? . . . . A: Yes, it did not comply with these insurance requirements.").

Unlike with the Substantial and Final Completion dates, though, there is no evidence in the record that, to the extent these breaches occurred, the breaches are material. *See Lawry v. Palm*, 192 P.3d 550, 567 (Colo. App. 2008) ("A material term goes to the root of the matter or essence of the contract. Materiality must be assessed in the context of the expectations of the parties at the time the contract was formed.").  Nor has either party conclusively established the materiality of any of these other alleged breaches.  Accordingly, whether these allegations constitute material

breaches is a question better addressed by the trier of fact.  *Id.* ("The trier of fact should consider the importance or seriousness of the breach and the likelihood that the injured party will nonetheless receive substantial performance.").

     D.     <u>VSRI's Alleged Damages</u>

VSRI alleges it "was (and continues to be) damaged by the Zip-Flyer Defendants' breaches of the Contract."  Pl. Mot. at 22.  Defendants argue, "The Court should refuse to address VSRI's motion as it relates to resulting damages because VSRI admits disputed material facts remain as to this element."  Def. Resp. at 23.  "Contract damages are recoverable only to the extent they 'were the foreseeable result of a breach at the time the contract was made.'"  *Core-Mark Midcontinent, Inc. v. Sonitrol Corp.*, 300 P.3d 963, 973 (Colo. App. 2012) (quoting *Giampapa v. American Family Mut. Ins. Co.*, 64 P.3d 230, 240 (Colo. 2003)).  The breaching party "must have had reason to foresee both the type and the general magnitude of damages."  *Id.*  Lost profits are a recoverable type of damages if "the defendant *knew or should have known* that these [lost profit] damages would probably be incurred by the plaintiff."  *See Denny Const., Inc. v. City and Cnty. of Denver*, 199 P.3d 742, 750–751 (Colo. 2009) (emphasis in original) (quoting *Giampapa*, 64 P.3d at 240).

VSRI acknowledges there are disputed material facts as to the amount of its damages, but not to the existence of damages.  Pl. Reply at 24.  The Court agrees.  Defendants admit the "Zipline was not completed in Summer of 2018, as originally planned."  Exh. B at 4; *see* Def. Resp. at 12. In fact, as of the filing of these motions, the Zipline was still not open for business.  Exh. B at 4. As a result of not being completed, VSRI has incurred years of "lost profits" from revenue that would have been generated had the Zipline been open.  *Id.*  By executing CO5, ZF NY knew that that the Zipline was to be completed by November 8, 2017.  Exh. C at VSRI000081.  Hence, ZF

NY knew or should have known that, if the Zipline was not completed by that date, VSRI would not be able to operate the Zipline and collect revenue from it. That type of harm was foreseeable at the time ZF NY executed CO5. *Core-Mark*, 300 P.3d at 973. The "general magnitude" of the damages has yet to be proven. Therefore, the Court finds VSRI is damaged by ZF NY's breach in an amount to be determined at trial.[3] Because ZF KY's alleged breach is disputed, the Court must find that any damages caused by ZF KY are also disputed.

For the previous reasons, the Court finds summary judgment on the issue of whether Defendants suffered damages appropriate as to ZF NY but inappropriate as to ZF KY.

## II.   Defendants' Motion

Defendants seek summary judgment on two issues. First, Defendants argue the Court should grant summary judgment as to the scope of VSRI's damages. Second, Defendants assert Mr. Lerner cannot be held personally liable in this action. For the following reasons, the Court grants in part and denies in part the motion for summary judgment.

### A.   Scope of VSRI's Damages

Defendants make three arguments with respect to VSRI's damages. First, Defendants believe VSRI's damages, if any, are limited to the liquidated damages provision in the Amendment. Def. Mot. at 6. Second, Defendants claim that VSRI improperly seeks damages beyond the benefit of the bargain in the original contract. Def. Mot. at 10. Third, Defendants argue that VSRI failed to mitigate its damages. Def. Mot. at 13–14. VSRI responds that the liquidated damages provision only applies to the breach of the Substantial Completion date, the liquidated damages provision appears only in the Amendment and thus applies only to the parties

---

[3] Of course, this assumes VSRI is able to establish its performance of the Contract, since the Court did not grant summary judgment on that issue. *See supra* at 13.

to that Amendment, the Zipline's redesign was necessary so the costs associated with that are recoverable, and VSRI did not fail to mitigate its damages.  Pl. Resp. at 14–19.

### 1.      Liquidated Damages

The liquidated damages clause appears only in the Amendment.  It provides that for "ANY DELAY IN ACHIEVING THE SUBSTANTIAL COMPLETION DATE DUE TO CAUSES REASONABLY WITHIN SELLER'S CONTROL . . . SELLER SHALL PAY TO BUYER AS LIQUIDATED DAMAGES . . . THE AMOUNT OF 4500.00 PER CALENDAR DAY FOR EACH DAY THAT SUBSTANTIAL COMPLETION IS NOT ACHIEVED."   Exh. D at VSRI000033.   The Amendment also provides that this provision is "NOT PUNITIVE IN NATURE AND REPRESENT[S] THE PARTIES' BEST ESTIMATE OF BUYER'S DAMAGES SHOULD THE PROJECT NOT BE SUBSTANTIALLY COMPLETED."  *Id.*  By the language of this provision, then, it appears that the liquidated damages provision may only apply to whether Defendants performed enough work to meet the Substantial Completion date.  Defendants have not provided conclusive evidence that this provision applies to all aspects of VSRI's claim.  As such, the Court cannot grant summary judgment as to Defendants' contention that VSRI's damages are limited to liquidated damages.

### 2.      Damages Beyond the Scope

Defendants contend that, because VSRI chose to replace them with Holmes and to pursue a different type of cable, VSRI allowed additional costs to accrue for which Defendants should not be contractually liable.  Def. Reply at 11.  VSRI asserts that "Holmes discovered that Defendants' design was faulty and would not work," which necessitated the need for additional expenses.  Pl. Resp. at 19.  Because the evidence presented to the Court does not conclusively establish whether (or to what extent) VSRI may have gone beyond the scope of the contractual agreement with

Defendants in using Holmes, this issue is best left to the trier of fact to resolve.  Finding a genuine dispute as to whether VSRI potentially incurred costs for which Defendants are not liable, the Court denies summary judgment on this issue.

        3.      Mitigation of Damages

Finally, Defendants argue that "[i]nstead of mitigating its financial harm by proceeding with the existing zipline plan and partially completed structures, [VSRI] adopted plans for a new-to-market zipline system designed to increase ridership."  Def. Mot. at 14.  Defendants admit that "[w]hile determination of whether a plaintiff failed to mitigate its damages is typically a question of fact," they request the Court "grant summary judgment . . . to limit [VSRI] from claiming damages resulting from its choice to redesign the zipline."  *Id.*  Again, VSRI responds that there were good faith bases for VSRI's decision to redesign the zipline, including the allegation that Defendants' original design was faulty.  Exh. 4 at VSRI0013098–99.  Regardless of which party is correct on this issue, Defendants have not produced sufficient evidence to eliminate any genuine dispute.  As Defendants admit, mitigation of damages is an issue best decided by the trier of fact; thus, the Court denies summary judgment.

        B.      <u>Shawn Lerner's Personal Liability</u>

Defendants contend that they are entitled to summary judgment on VSRI's claims against Shawn Lerner because he is not personally liable under any of the parties' agreements.  Def. Mot. at 14–19.  VSRI asserts that Mr. Lerner is liable for operating ZF KY while knowing that entity was dissolved.  Pl. Resp. at 22.  Moreover, VSRI argues that Mr. Lerner personally executed CO5 and is thus a party to the Contract.  *Id.* at 20.  Finally, VSRI contends Mr. Lerner is personally liable because it has pled the remedy of piercing the corporate veil on an alter ego theory of liability.  *Id.* at 23–24.

1.      ZF KY's Administrative Dissolution

As its name implies, ZF KY is a Kentucky limited liability corporation.  Pursuant to Colo. Rev. Stat. § 7-90-805(4), Kentucky laws "govern the organization and internal affairs" of the company.  Colo. Rev. Stat. § 7-90-805(4) ("As to any foreign entity transacting business or conducting activities in [Colorado], the law of the jurisdiction under the law of which the foreign entity is formed shall govern."); *see* Ky. Rev. Stat. § 275.380(1)(a) (a similar Kentucky statute). Under Kentucky law, when an entity is administratively dissolved, it can apply for reinstatement "at any time after the effective date of dissolution."  Ky. Rev. Stat. § 14A.7-030(1).  Once the Kentucky Secretary of State determines the entity's application for reinstatement is satisfactory, the reinstatement becomes effective, and "[t]he liability of any agent shall be determined as if the administrative dissolution or revocation had never occurred."  Ky. Rev. Stat. § 14A.7-030(3)(c).

For its failure to file a 2010 annual report, ZF KY was administratively dissolved on November 2, 2010.  Exh. B at 5.  It is undisputed that Mr. Lerner continued to operate ZF KY as a corporation after its administrative dissolution; after all, ZF KY entered into at least the Agreement in 2015 and several change orders from 2015 to 2017.  Exh. C at VSRI000014, VSRI000069–80.  VSRI is correct that "Kentucky's Limited Liability Company Act states that '[a]ll persons purporting to act as or on behalf of a limited liability company, knowing there has been no organization under this chapter, or who assume to act for a limited liability company without authority to do so, shall be jointly and severally liable for all liabilities created while so acting.'"  *Id.* (quoting Ky. Rev. Stat. § 275.095).  However, Defendants are correct that "a member of a limited liability company enjoys statutory immunity from liability under [Kentucky law] for actions taken during a period of administrative dissolution so long as the company is reinstated before a final judgment is rendered against the member."  Def. Mot. at 15 (quoting *Pannell v.*

*Shannon*, 425 S.W.3d 58, 67 (Ky. 2014)).  The Kentucky Secretary of State reinstated ZF KY on September 17, 2018.  There has been no judgment rendered against Mr. Lerner; accordingly, Mr. Lerner's liability is "determined as if the administrative dissolution . . . had never occurred."  Ky. Rev. Stat. § 14A.7-030(3)(c).  Because members of Kentucky limited liability companies "enjoy statutory immunity from liability" under Kentucky law, Mr. Lerner cannot be held personally liable because ZF KY operated while administratively dissolved.

Therefore, as a matter of law, the Court grants summary judgment as to whether Mr. Lerner is personally liable due to ZF KY's dissolution.

### 2.      Change Order No. 5

VSRI asserts that Mr. Learner is also personally liable, because he personally executed CO5.  Pl. Resp. at 20.  VSRI points to CO5 "expressly includ[ing] reference to 'the below signatory' [Mr. Lerner] in 'executing this Change Order.'"  *Id.*

Paragraph 1 of CO5 provides:

> Seller and the below signatory executing this Change Order on behalf of Seller hereby represent and warrant that: 1) the New York Limited Liability Company Zip-Flyer, LLC ("Seller") is an entity in good standing, 2) Seller is authorized to enter into this Change Order and perform all services contemplated under the Agreement and this Change Order, and 3) the below signatory has the authority to bind Seller.  Seller does hereby assume all rights and responsibilities of "Seller" under the Agreement and all change orders.  Seller agrees to be bound by the Agreement (and all change orders) in the same manner as if Seller had executed each such agreement.

Exh. E at 1.

VSRI cites to *Ricker v. V-W Acceptance Corp.*, 349 F.2d 892, 895 (10th Cir. 1965), for the proposition that "evidence of intent to bind the signatory as well as the corporation is sufficient to bind that signatory personally to the contract."  Pl. Resp. at 20.  While that proposition is correct, the factual scenario present in *Ricker* materially differs from this case.  There, the agreement at

issue contained unambiguous language that the "undersigned" promis[ed] to do something.  For example, in "the first paragraph of the written guaranty, the 'undersigned' guarantees . . . 'the performance and payment at maturity' of any and all contracts."  *Ricker*, 349 F.2d at 895.  The agreement also stated that "the 'undersigned' guarantees the faithful performance of any and all written agreements."  *Id.*

In this case, there is no such clear indication that Mr. Lerner signed on behalf of himself; to the contrary, he signed as "Founder & CEO" of ZF NY.  Exh. C at VSRI000083.  If Mr. Lerner had simply signed his name, there might be some argument that he signed on behalf of himself.  *See Sage v. Ashford*, 358 P.2d 599, 600 (Colo. 1961) ("[I]f one signs his name to a simple contract without designating that he does so as an officer or agent[,] . . . the one signing is personally liable on a contract so signed.").  In fact, Mr. Lerner signed using his titles for every document at issue in this case, regardless of the entity.  *Id.* at VSRI0000014, VSRI0000044–45, VSRI0000069, VSRI0000078–79.  Therefore, under VSRI's logic, Mr. Lerner would be personally liable under every document signed in this case.  However, that logic also leads to the conclusion that John Buhler, the signatory for VSRI, is liable.  Under Colorado law, this just cannot be.  *See Coffee v. Inman*, 728 P.2d 376, 381 (Colo. App. 1986) (only when a party "sign[s] [a contract] without indicating that [she was] signing for the corporation [should] personal liability attach").  Because there is no genuine dispute as to how the documents are signed, the Court finds as a matter of law that Mr. Lerner cannot be held personally liable because of his signature on CO5 (or any other document at issue).  Accordingly, the Court grants summary judgment on this issue.

### 3.  Alter Ego Status

VSRI's final argument regarding Mr. Lerner's personal liability is that he "is legally responsible for the Zip-Flyer Defendants' breaches of contract on the basis of alter ego liability."

Pl. Resp. at 23.  *See Martin v. Freeman*, 272 P.3d 1182, 1184 (Colo. App. 2012).  In piercing the corporate veil, the court must conclude "(1) the corporate entity is an alter ego or mere instrumentality; (2) the corporate form was used to perpetrate a fraud or defeat a rightful claim; and (3) an equitable result would be achieved by disregarding the corporate form." *Id.* Importantly, "[t]he third prong, in particular, recognizes that veil piercing is a 'fact-specific' inquiry." *Id.*  VSRI has pleaded the remedy of piercing the corporate veil, alleging "the corporate entit[ies] [are] an alter ego" of Mr. Lerner.  *Id.*  Defendants did not address this argument in their Reply but have denied the alter ego allegations in their Answer.  *See* ECF 120, ¶ 15.  Based on that denial, a material issue of fact exists, precluding summary judgment on this ground.

## CONCLUSION

In light of the foregoing analysis, VSRI's Motion [filed March 31, 2020; ECF 75] is **granted in part** and **denied in part**.  The Court grants summary judgment as to ZF KY entering into the Agreement and ZF NY assuming the Contract through CO5.  The Court also grants summary judgment as to ZF NY's breach of the Substantial and Final Completion dates and VSRI having been damaged by that breach.  The Court denies summary judgment as to the liability of the Zip-Flyer Defendants based on whether ZF KY was a party to the Amendment and the factual dispute as to VSRI's performance.  Further, Defendants' Motion [filed March 31, 2020; ECF 96] is **granted in part** and **denied in part**.  The Court finds summary judgment appropriate as to the issue of whether Mr. Lerner is personally liable through either ZF KY's administrative dissolution or his signatures on the contractual documents.  However, the Court denies summary judgment as to Mr. Lerner's personal liability, because a genuine dispute exists regarding his alter ego status.  Finally, the Court denies summary judgment on the scope of VSRI's damages.

SO ORDERED.

Dated this 27th day of July, 2020, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge